UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| IRENE KAY CHIMEL, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:11-cv-699 |
| ) | |
| v. ) | Honorable Joseph G. Scoville |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **OPINION** |
| Defendant. ) | |
| _____) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). On May 14, 2008, plaintiff filed her application for benefits alleging a May 15, 2007 onset of disability. (A.R. 107-09). Her claim was denied on initial review. On March 11, 2010, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 31-61). On April 13, 2010, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 13-23). On May 26, 2011, the Appeals Council denied review (A.R. 1-4), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claim for DIB benefits. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 9). Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of her treating

physician, Craig Matheson, D.O. (Plf. Brief at 2). Upon review, the Commissioner's decision will be vacated and the matter remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve

the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on May 15, 2007, her alleged onset of disability, and continued to meet the requirements through the date of the ALJ's decision. (A.R. 15). Plaintiff had not engaged in substantial gainful activity on or after May 15, 2007. (A.R. 15). Plaintiff had the following severe impairments: "osteoarthritis, arthritis in the right hip, knee problems, disc herniation of the cervical spine, lateral disc protrusion, and degenerative disc disease of the lumbar spine." (A.R. 15). The ALJ determined that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 17). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant retains the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently. She is able to stand/walk a total of 6 hours in an 8-hour workday (with normal

>breaks).  She is able to sit for a total of 6 hours in an 8-hour workday (with normal breaks).
>She requires a sit/stand option, which requires the ability to change positions every 2 hours
>for five minute intervals.  She is limited to occasional climbing of ramps and stairs.  She is
>limited to occasional balancing, stooping, kneeling, crouching, and crawling.  She is
>precluded from climbing ladders, ropes, and scaffolds.

(A.R. 18).  The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible.  (A.R. 18-22).  The ALJ found that plaintiff was not disabled at step 4 of the sequential analysis[1] because she was capable of performing her past relevant work as a motel cleaner. (A.R. 22).

Plaintiff argues that the ALJ "failed to give appropriate weight" to the opinions of her treating physician, Craig Matheson, D.O.  (Plf. Brief at 2).  The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.  20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  A treating physician's opinion that a patient is disabled is not entitled to any special significance.  *See* 20 C.F.R. § 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician.").  Likewise, "no special significance" is attached

---

[1]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity.  Next, the claimant must demonstrate that she has a 'severe impairment.'  A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.'  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past.  Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.  The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling, deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic

techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

Plaintiff underwent a lumbar laminectomy in 1995. (A.R. 261). X-rays of her cervical spine in 2006 revealed a disc herniation at the C6-C7 level and mild spondylosis of the cervical spine. (A.R. 254-55). Plaintiff was 49-years-old on October 30, 2006, the date she began treatment with Dr. Matheson. (A.R. 251). The ALJ considered the limited medical evidence that plaintiff presented in support of her claim for DIB benefits:

> [T]he claimant attended an additional examination for neck and back pain (Exhibit 7F/18). Wherein, she endorsed that she took Soma, Vicodin, and Aleve for her pain. Additionally, she stated that she had a history of hyperlipidemia and migraine headaches. Examination revealed that the claimant had markedly decreased range of motion in her back (Exhibit 7F/20). And her neck's range of motion was restricted (Exhibit 7F/19). Nonetheless, she had a full range of motion in her upper extremity joints (Exhibit 7F/20). Further, deep tendon reflexes were noted as +2 bilaterally with no evidence of clubbing, cyanosis, or

edema. Upon conclusion, she was diagnosed with spinal osteoarthritis, migraine headache, hypercholesterolemia, radiculopathy, and low back pain. Moreover, she was advised to remain compliant with her prescription regime[n]. In December 2006 and March 2007, treatment notes indicate that the claimant's prescriptions for back and neck pain were refilled (Exhibits 2F/1-3; 7F/15-17). Subsequently, she was advised to return for follow-up examination in July 2007 (Exhibit 2F/3).

Notably, the claimant did not again attend additional evaluation until over a year later (Exhibit 2F/4). Specifically, in April 2008, she underwent examination for a burn on her tongue. At that time, she asserted only generalized joint aches and pains (Exhibit 7F/10). Later that month, she stated that she was experiencing hip pain and stiffness, which made walking difficult (Exhibit 2F/6). However, she admitted that her symptoms were likely related to the cold damp weather. Subsequently, she was administered a Depo Merdol injection to mitigate her hip pain (Exhibit 2F/7). And she was advised to return for a follow-up in one week (Exhibit 7F/8).

The claimant did not return for evaluation for any alleged impairment until August 2008 (Exhibit 5F). Here, she underwent a thorough internal consultative examination with Donald Sheill, M.D. She reported that her greatest limitation was pain in her hips, which was worse on the right than the left (Exhibit 5F/5). Moreover, she asserted continued back pain. Notably, she stated that she had quit her job in the past, "even though her boss felt that she was doing everything that was expected." She denied any problems with her knees, but endorsed some numbness at the right lateral foot and thigh. Examination demonstrated that the claimant's hands were free of atrophy, swelling, and deformity (Exhibit 5F/6). And, her fine and gross dexterity were intact and sensory was full. She had only minimal tenderness in her lumbar spine. Straight leg raise testing was negative for radicular symptoms. The right hip was irritable on the internal and external rotation. Also, both hips were tender. The lower extremities were unremarkable with no atrophy. She did have a reduction in sensory over the right lateral thigh and right lateral foot along with an absent Achilles reflex. Nonetheless, her gait was normal and she had no difficulty with tandem gait after the first two steps. Overall, she was diagnosed with osteoporosis, arthritis of the right hip, and knee problems.

The record demonstrates that the claimant attended only one additional examination (Exhibit 7F/6). Specifically, in November 2008, she endorsed that she was coughing and experiencing shortness of breath. However, she conceded that she continued to smoke. Notably, she did not report any symptoms of muscle or joint pain. And, she was advised to continue to take Vicodin, Aleve, and Soma as needed to mitigate her symptoms (Exhibit 7F/7). Thereafter, there is no evidence that plaintiff sought further treatment or evaluation for her alleged impairments during the relevant time period.

(A.R. 19-20).

On November 12, 2008, Dr. Matheson completed a "Lumbar Spine Residual Functional Capacity Questionnaire." (A.R. 235-38). The ALJ stated that Dr. Matheson's opinions were entitled to little weight "to the extent [they were] *inconsistent* with the residual functional capacity outlined above" and "to the extent [they were] *consistent* with the residual functional capacity evidenced above." (A.R. 21) (emphasis added). The ALJ stated a conclusion without any supporting explanation. He did not provide "good reasons" for the weight he gave to Dr. Matheson's opinions. The ALJ's decision fails to satisfy the procedural component of the treating physician rule defined by the Sixth Circuit in *Wilson v. Commissioner* and its progeny. *Wilson v. Commissioner*, 378 F.3d at 544; *see Cole v. Astrue*, 661 F.3d at 937-38.

## Conclusion

For the reasons set forth herein, the Commissioner's decision will be vacated and the matter be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.


Dated:  January 29, 2013         /s/  Joseph G. Scoville
                                 United States Magistrate Judge